# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Marvin Aspen | Sitting Judge If Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 8063 | **DATE** | 1/30/2003 |
| **CASE TITLE** | Mark McDermott vs. Continental/Midland, Inc., et al | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
  ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry]   Enter Memorandum Opinion and Order: Alcoa's motion to dismiss (3-1) is granted.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | JAN 31 2003 date docketed | 16 |
| | Notified counsel by telephone. | | | |
| | Docketing to mail notices. | | | |
| | Mail AO 450 form. | U.S. DISTRICT COURT CLERK | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | 1/30/2003 date mailed notice | |
| GL | courtroom deputy's initials | 03 JAN 30 PM 2:09 Date/time received in central Clerk's Office | GL mailing deputy initials | |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

MARK McDERMOTT, )
)
Plaintiff, )
)
v. ) Case No. 02 C 8063
)
)
CONTINENTAL/MIDLAND, INC., )
a Delaware corporation, individually and d/b/a )
HUCK FASTENERS, HUCK INTERNATIONAL, )
INC., a Delaware corporation, KORE II, INC., )
an Illinois corporation d/b/a HUCK FASTENERS II, )
and ALCOA, INC., a Pennsylvania corporation, )
)
Defendants. )

**DOCKETED**
**JAN 3 1 2003**

## MEMORANDUM OPINION AND ORDER

MARVIN E. ASPEN, District Judge:

Plaintiff, Mark McDermott, filed a complaint against Defendants alleging breach of contract and defamation in the Circuit Court of Cook County, Illinois. Because of the diversity of the parties and the amount in controversy, Defendant Alcoa removed the case to this Court pursuant to 28 U.S.C. §§1332 and 1441. Before us is Alcoa's motion to dismiss both counts of McDermott's amended complaint. For the reasons stated below, we grant Alcoa's motion.

I. **BACKGROUND**

The following factual allegations are taken from McDermott's amended complaint and are deemed true for the purpose of Alcoa's motion. In September 1986, Midwest Fastener Corporation ("Midwest") hired Mark McDermott as a Manufacturing Supervisor. Midwest promoted McDermott to the position of Distribution Manager in June 1989. In early January 2001, Alcoa acquired possession

16

of and assumed control over Midwest, its accounts, workforce, and other assets.[1] McDermott continued to work as a Distribution Manager until February 22, 2002 at which time Alcoa terminated his employment.

While employed by Alcoa, McDermott received an employee handbook ("Handbook"). The Handbook contains a disclaimer that appears on the bottom of the first page under the heading "Introduction." The disclaimer sets forth that the "Handbook is intended to provide employees with a general understanding of the Company's personnel policies, work rules and benefits and it is not intended to be an employment contract, promise, or guarantee of any kind or to contain all information employees need to know." The Handbook adds that Alcoa "reserves the right to change or revoke any of its benefits, conditions or privileges of employment, policies, practices, procedure or guidelines contained [here]in . . . at any time with or without notice or for any reason and without a written revision of the Handbook." The Handbook explains that "employment is 'at-will' and is for no definite or specified period, regardless of the time and manner of payment of wages or salary."

The Handbook contains "Disciplinary Action Guidelines." According to the guidelines, "[i]t is the responsibility of every Supervisor to fairly evaluate employees conduct and to administer discipline when necessary." Although the Handbook lists various types of inappropriate conduct, it notes that the list is "not intended to include all rules of conduct and the Company shall, when it deems appropriate, change them, establish additional rules or eliminate some with or without notice." The Handbook further lists "Corrective Action Procedures." The Handbook does not mandate that the procedures be applied in an instance of employee misconduct. Rather, the Handbook describes the procedures as "guidelines," noting that "[s]ome forms of misconduct are normally considered so improper as to

---

[1] At the time, Continental/Midland, Inc., Kore II, Inc. and Huck International, Inc. were subsidiaries of Alcoa. Upon its purchase of Midwest Fastener Corporation, Alcoa renamed its new acquisition Huck Fasteners, Inc.

reasonably justify immediate discharge." The Handbook states that "[v]iolations of Company policies or rules, unproductive or incompetent performance, or other actions that are detrimental to the Company cannot be condoned." Consequently, the Handbook explains that misconduct involving "a violation of Company policy, procedures, programs, rules, instruction, past practice, etc., or that is detrimental to the Company, customers, or employees, or performance that does not meet standards may result in discipline up to and including discharge."

On February 22, 2002, Robert Benning, McDermott's supervisor, told McDermott that he was being fired. Benning explained that Jeff Glazer, then director of the personnel department, had told him that McDermott was being terminated because he "talked back" and was "disrespectful to his supervisor," that he "lost product" and was "incompetent" in inventory control and employee supervision, and that he was "authorizing excessive overtime" and allowing others to "sleep on the job." McDermott subsequently filed the two count amended complaint presently before us. McDermott first claims that the above described Handbook constitutes an employment contract, which Alcoa breached when it fired him on February 22, 2002. McDermott secondly alleges that Alcoa defamed him *per se* when Glazer explained to Benning why McDermott was being fired.

## II. ANALYSIS

### A. Standard of Review

The purpose of a motion to dismiss under Rule 12 (b)(6) is to decide the adequacy of the complaint, not the merits of the case. *See Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In considering a motion to dismiss, we must accept all well-pled allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *See MCM Partners, Inc. v. Andrews-Bartlett & Assoc., Inc.*, 62 F.3d 967, 972 (7th Cir. 1995), *aff'd* 161 F.3d 443 (7th Cir. 1998), *cert. denied* 528 U.S. 810 (1999). Therefore, a complaint should not be dismissed "unless it appears beyond all

doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).

### B. Breach of Contract

McDermott's complaint alleges that the Handbook constituted a contract of employment between himself and Alcoa. Alcoa argues that McDermott's complaint fails to state a claim for breach of contract because the Handbook does not constitute a contract as a matter of law. We agree. In order for an employee handbook to constitute a contract of employment, the following three elements must be present:

> First, the language of the policy statement must contain a promise clear enough that an employee would reasonably believe that an offer has been made. Second, the statement must be disseminated to the employee in such a manner that the employee is aware of its contents and reasonably believes it to be an offer. Third, the employee must accept the offer by commencing or continuing to work after learning of the policy statement. *Doe v. First Nat'l Bank of Chicago*, 865 F.2d 864, 872 (7th Cir. 1989) (quoting *Duldulao v. St. Mary of Nazareth Hosp. Center*, 505 N.E.2d 314, 318 (Ill. 1987)).

A disclaimer in an employee handbook, however, can foreclose contract formation by demonstrating that the employer did not make a clear promise of continuing employment. *See Workman v. United Parcel Serv., Inc.*, 234 F.3d 998, 1000 (7th Cir. 2000). Indeed, "a disclaimer, if clear and forthright . . . is a complete defense to a suit for breach of contract based on an employee handbook." *Id.*; *see also Freeman v. Chicago Park District*, 189 F.3d 613, 617 (7th Cir. 1999).

The Handbook Alcoa provided to McDermott contains a disclaimer that is both clear and forthright. The disclaimer appears on the first page of the Handbook under the heading "Introduction." The disclaimer explicitly states that the Handbook "is not intended to be an employment contract, promise, or guarantee of any kind or to contain all information employees need to know." In *Workman v. United Parcel Service, Inc.*, the Seventh Circuit explained that where an employee handbook expressly disclaims creating an employment contract, the handbook need not additionally state that the

4

employment is at will. *See* 234 F.3d at 1001. Nonetheless, the Handbook at issue in this case additionally states that "employment is 'at-will' and is for no definite or specified period, regardless of the time and manner of payment of wages or salary."

McDermott insists that Alcoa fired him without notice and without an opportunity to contest Alcoa's accusations that he violated Company rules or policies. However, the very nature of at-will employment dictates that "an employee can be discharged for any reason or none at all." *Brandon v. Anesthesia & Pain Management Associates Ltd.*, 277 F.3d 936, 940 (7th Cir. 2002) (citing *Pratt v. Caterpillar Tractor Co.*, 500 N.E.2d 1001, 1002 (1986)). Indeed, the Handbook does not require Alcoa to take certain steps when disciplining an employee. Although the Handbook contains "Disciplinary Action Guidelines," which list various types of inappropriate conduct, it notes that the list is "not intended to include all rules of conduct and the Company shall, when it deems appropriate, change them, establish additional rules or eliminate some with or without notice." The Handbook also lists "Corrective Action Procedures," which it describes as "guidelines," that may be applied in instances of employee misconduct. The Handbook explains that misconduct involving "a violation of Company policy, procedures, programs, rules, instruction, past practice, etc., or that is detrimental to the Company, customers, or employees, or performance that does not meet standards may result in discipline up to and including discharge." Alcoa exercised its discretion to hire and fire when it terminated McDermott for his misconduct. In light of the Handbook's clear and forthright disclaimer and its provision for at-will employment, we dismiss McDermott's claim for breach of contract.[2]

---

[2]McDermott asserts that Alcoa's failure to provide him with any separation pay, benefits, or other compensation effect upon his termination breached the Huck International, Inc. Employee Separation Plan ("Plan"). The introductory paragraph on the first page of the Plan states "[i]n the event of involuntary job loss due to a reduction in force, the Company provides separation pay benefits as unemployment income assistance." The Plan specifically lists that it does not provide benefits for an "[i]nvoluntary termination of employment for violation of a Company rule of conduct or policy." McDermott was not entitled to any benefits under the Plan because Alcoa terminated

5

### C. Defamation

McDermott's complaint also alleges that Alcoa defamed him *per se* when Jeff Glazer, then personnel department director, told Robert Benning, McDermott's supervisor, that McDermott was being terminated because he "talked back" and was "disrespectful to his supervisor," that he "lost product" and was "incompetent" in inventory control and employee supervision and that he was "authorizing excessive overtime" and allowing others to "sleep on the job."[3] McDermott's complaint adds that Alcoa's "actions were undertaken with the malicious intent to harm McDermott's reputation and lower him in the eyes of the community or deter third-persons from associating with or hiring him." To state a claim for defamation, a plaintiff must allege that "(1) the defendant made a false statement about the plaintiff, (2) there was an unprivileged publication of a defamatory statement to a third party with fault by the defendant, and (3) the publication damaged the plaintiff." *Parker v. House O'Lite Corp.*, 756 N.E.2d 286, 291-92 (Ill. App. Ct. 2001). McDermott's complaint fails to sufficiently plead the first and second elements of a claim for defamation. McDermott's complaint first fails to allege that the Glazer's remarks about him were false. That failure alone warrants the dismissal of McDermott's claim for defamation. However, McDermott's complaint secondly fails to sufficiently plead the that the statements Glazer made to Benning were unprivileged.

Under Illinois law, a qualified privilege exists when: (1) some interest of the person who publishes the defamatory matter is involved; (2) some interest of the person to whom the matter is

---

him for violations of Alcoa's rules of conduct and policies.

[3]McDermott's complaint does not document any other publication of these or other accusations to a third party. In his response to Alcoa's motion to dismiss, McDermott asserts that the "statements made by Alcoa regarding McDermott's employment performance and conduct, were published throughout the management structure, including the human resources personnel, at McDermott's place of employment." The only publication to a third party McDermott's complaint contains is Glazer's conversation with Benning regarding the reasons for McDermott's termination. As discussed *infra*, however, these statements were neither defamatory *per se* nor unprivileged.

6

published or of some other person is involved; or (3) a recognized interest of the public is involved. *See Kuwik v. Starmark Star Marketing & Admn., Inc.*, 619 N.E.2d 129, 133 (Ill. 1993) (citing S. Harper et al., The Law of Torts §5.25, at 216 (2d ed. 1986)). In order "[t]o overcome the privilege, the plaintiff has to plead . . . that the statements were made with actual malice." *Krasinski v. United Parcel Serv., Inc.*, 530 N.E.2d 468, 471 (Ill. 1988). The plaintiff must therefore "plead . . . that the statement was made with knowledge of its falsity or in reckless disregard of whether it was true or false." *Id.* (citations omitted).

We agree with Alcoa's contention that a qualified privilege applies to Glazer's comments to Benning. Glazer, as the director of the personnel department, had an interest in articulating the reasons for McDermott's termination. Benning had a similar interest in the reasons for McDermott's termination given his dual role as McDermott's supervisor and the person who informed McDermott that he was being fired. Conversely, we find that McDermott has not sufficiently pled that Glazer made the statements to Benning with actual malice. McDermott's complaint states that Alcoa's "actions were undertaken with the malicious intent to harm McDermott's reputation and lower him in the eyes of the community or deter third-persons from associating with or hiring him." McDermott's complaint does not aver that Glazer made the remarks to Benning knowing they were false, or in reckless disregard of their truth or falsity. Indeed, McDermott's complaint fails to even allege that Glazer's statements were false. Accordingly, we dismiss McDermott's claim for defamation.

7

## D. CONCLUSION

For the foregoing reasons, Alcoa's motion to dismiss McDermott's amended complaint is granted. It is so ordered.

_____
MARVIN E. ASPEN
United States District Judge

Dated  1/30/03